**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**SUMAYA HAMADMAD,**

**Plaintiff,**

**v.**

**WALTER ('TED') CARTER, JR., *et al.*,**

**Defendants.**

**Civil Action 2:24-cv-4236**
**Judge Sarah D. Morrison**
**Magistrate Judge Chelsey M. Vascura**

# OPINION AND ORDER

Plaintiff, Sumaya Hamadmad, sues Defendants, several employees of the Ohio State University ("OSU"), arising out of Plaintiff's April 25, 2024 arrest for trespass, which she alleges violated her First and Fourth Amendment rights. This matter is before the Court on Plaintiff's Motion to Modify Scheduling Order and for Leave to File Second Amended Complaint (ECF No. 33). For the reasons below, Plaintiff's Motion is **GRANTED**.

## I. BACKGROUND

Plaintiff commenced this action on December 5, 2024, naming as Defendants only Walter ("Ted") Carter, Jr. (OSU's president) and Susan Liu, an OSU police detective. (Compl., ECF No. 1.) The original Complaint alleged that Liu was the officer responsible for the decision to arrest Plaintiff. (*Id.*) Plaintiff amended her Complaint on April 17, 2025, adding new Defendants Alan Horujko (an OSU police lieutenant), Eric Whiteside (an OSU police deputy chief), and Dennis Jeffrey (an OSU police deputy chief). (ECF No. 15.) Plaintiff's First Amended Complaint alleged that Liu "participated in the decision" to arrest Plaintiff, that Horujko "directed the arrest

of Plaintiff," and that Whiteside and Jeffrey "made the determination that Plaintiff's peaceful and nondisruptive presence on the South Oval constituted criminal trespass." (Am. Compl. ¶¶ 9–12, ECF No. 15.) Plaintiff also alleged that Whiteside and Jeffrey "determined . . . the protest violated the University Space Rules because it was a continuation of an event that had previously had improper tents." (*Id.* ¶ 22.)

On December 30, 2025, the Court granted in part Defendants' Motion to Dismiss. (ECF No. 22.) As to Jeffrey, the Court concluded that Plaintiff failed "to allege the requisite personal involvement" because she did not "allege that [he] made the decision to prosecute her or made 'knowing misstatements . . . to the prosecutor' or exerted 'pressure or influence, over an individual who [ ] made the decision to prosecute[.]'" (*Id.* at 14) (quoting *Sykes v. Anderson*, 625 F.3d 294, 317 (6th Cir. 2010)). Nor did Plaintiff "allege that [Jeffrey] made any determination that the USR applied to prohibit her conduct or participated in her arrest. '[A]n officer's "mere presence" at the scene of an arrest fails to establish § 1983 liability.'" (*Id.* at 14–15) (quoting *Alexander v. Carter for Byrd*, 733 F. App'x 256, 267 (6th Cir. 2018)). The Court therefore dismissed all claims against Jeffrey. (*Id.* at 20.)

Meanwhile, on March 12, 2025, the Court entered a Preliminary Pretrial Order setting the deadline for "[m]otions or stipulations addressing the parties or pleadings" at May 15, 2025. (ECF No. 13). That Order also entered deadlines for completion of discovery and filing of dispositive motions, which were later extended to July 31, 2026, and November 30, 2026, respectively. (ECF No. 31.)

On June 30, 2026, more than a year after the deadline for motions to amend the pleadings, Plaintiff filed the subject motion for leave to file a Second Amended Complaint. (ECF No. 33.) Plaintiff seeks amendment to re-assert her claims against Jeffrey, relying on body

camera footage produced by Defendants on June 7, 2026, as well as subsequent deposition testimony, that show that Jeffrey made the decision to arrest Plaintiff and directed Horujko to make the arrest. (*Id.*) Defendants oppose Plaintiff's motion, contending that Plaintiff was not diligent in seeking amendment and that her proposed amendments are futile. (Defs.' Mem. in Opp'n, ECF No. 34.)

## II. STANDARDS GOVERNING PLEADING AMENDMENTS

District courts are required to enter a scheduling order, which limits the time "to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). When, as in this case, a party misses a scheduling order's deadlines and seeks a modification of those deadlines, the party must first demonstrate good cause. *See* Fed. R. Civ. P. 16(b)(4); *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quotation omitted) (citing cases); *see also Leary v. Daeschner,* 349 F.3d 888, 906 (6th Cir. 2003) ("[A] court choosing to modify the schedule upon a showing of good cause, may do so only if it cannot reasonably be met despite the diligence of the party seeking the extension." (quotation omitted)). "Another important consideration . . . is whether the opposing party will suffer prejudice by virtue of the amendment." *Leary*, 349 F.3d at 906 (citing *Inge*, 281 F.3d at 625).

If good cause is shown under Rule 16, the Court then considers whether amendment is appropriate under Federal Rule of Civil Procedure 15. Under Rule 15(a)(2), the Court should give leave for a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Teft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)

(citations omitted); *Oleson v. United States*, 27 F. App'x 566, 569 (6th Cir. 2001) (internal quotations omitted) (noting that courts interpret the language in Rule 15(a) as conveying "a liberal policy of permitting amendments to ensure the determination of claims on their merits"). "Nevertheless, leave to amend 'should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'" *Carson v. U.S. Off. of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)). A court may deny a motion for leave to amend for futility if the amendment could not withstand a motion to dismiss. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005).

## III. ANALYSIS

Plaintiff has demonstrated good cause to amend the case schedule. Defendants produced Horujko's body camera footage demonstrating Jeffrey's personal involvement in Plaintiff's arrest only on June 7, 2026. Horujko's and Jeffrey's depositions followed on June 10, 2026, and June 25, 2026, respectively. Plaintiff describes the import of the recently-produced video and subsequent deposition testimony:

> The video showed, for the first time, the lead-up to Dr. Hamadmad's arrest and her actual arrest. At 10:18, Lt. Horujko can be heard saying "how many do you want to do?" Deputy Chief Jeffrey then responds saying, "take her first," referring to Dr. Hamadmad. Dr. Hamadmad is arrested a little more than five minutes later, at 15:31 on the video. Lt. Horujko confirmed in his deposition that Deputy Chief Jeffrey directed him to have Dr. Hamadmad arrested. Deputy Chief Jeffrey did not dispute this in his own deposition. He also confirmed that he was personally involved in the lead-up to Dr. Hamadmad's arrest, including personally ordering her to leave the area in which she was sitting, and that, upon her arrest, instead of being issued a summons and released, she was slated and sent to jail based on orders he gave to the arresting officers.

(Pl.'s Mot. 6, ECF No. 33.) Plaintiff promptly moved to amend her complaint on June 30, 2026—23 days after receiving Horujko's body camera footage and only 5 days after Jeffrey's deposition.

In opposition, Defendants contest none of these facts or their relevance to Plaintiff's claims. Instead, Defendants criticize Plaintiff for her lack of diligence. They suggest that Plaintiff already knew of Jeffrey's involvement in her arrest and that the video and deposition testimony provided Plaintiff with nothing new. But as Plaintiff rightly points out, her prior allegations of Jeffrey's mere "involvement" were insufficient to withstand a motion to dismiss. What is new in the video and deposition testimony is confirmation that Jeffrey was a *decisionmaker* in Plaintiff's arrest, which was not reflected in Defendants' discovery responses or videos taken by other individuals at the scene. Defendants further suggest that Plaintiff could have requested Horujko's body camera footage the video earlier in discovery. Defendants omit, however, that they initially neglected to identify or produce Horujko's body camera footage in response to Plaintiff's requests for production of documents when they otherwise responded to her discovery requests on October 25, 2025. (*See* Defs.' Resps., ECF No. 38-2.) Plaintiff specifically requested "all videotapes and/or audio recordings in which Plaintiff appears; references to Plaintiff can be heard; and/or depicts the South Oval on April 25, 2024 . . . ." (*Id.* at Req. for Produc. No. 9.) In response, Defendants identified and produced "body worn camera and other video footage (OSU-Hamadmad 000024)," but did not produce Horujko's footage or state that they were withholding it as required by Federal Rule of Civil Procedure 34. (*Id.*) They did not produce the footage until June 7, 2026, just two days before Jeffrey's then-scheduled deposition.[1] Thus, the

[1] Jeffrey's deposition was postponed to June 25, 2026, after Defendants' June 7, 2026 document production to permit Plaintiff time to review the production.

eight-month delay in Plaintiff's receipt of the footage is squarely on Defendants' shoulders. Finally, Defendants' suggestion that Plaintiff should have made a public records request for Horujko's body camera footage, perhaps even before litigation began, is not persuasive. The availability of public records requests is not a substitute for a party's obligation to timely comply with legitimate discovery requests.

Nor have Defendants identified any likely prejudice from Plaintiff's proposed amendment. Although the discovery period has closed, Plaintiff asserts that she does not seek any additional discovery based on her proposed pleading amendments, and Defendants have identified no further discovery that would be necessary. Dispositive motions are not due until November 30, 2026, providing the parties with sufficient time to craft their summary judgment motions after amendment. *Cf. Miller v. Admin. Off. of Courts*, 448 F.3d 887, 898 (6th Cir. 2006) ("Because the discovery deadline had already passed and the deadline for filing dispositive motions . . . was imminent, the defendants would have been prejudiced if a further amendment had been permitted by the district court."). Nor is "the inherent prejudice of having to defend against Plaintiff's new claims" sufficient to preclude amendment. *See Ashley Furniture Indus., Inc. v. Am. Signature, Inc.*, No. 2:11-CV-00427, 2012 WL 1031411, at *3 n.3 (S.D. Ohio Mar. 27, 2012).

In sum, the Court finds good cause to permit Plaintiff to amend her Complaint under Rule 16(b)(4)(A). The Court now moves to the standard of Rule 15(a)(2), which directs the Court to "freely give leave [to amend] when justice so requires." Even so, amendment may be denied "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Carson*, 633 F.3d at 495. For the reasons related to

diligence and lack of prejudice outlined above, the Court finds that Plaintiffs' amendment is not brought in bad faith or for dilatory purposes, and amendment will not result in undue delay.

Defendants' remaining arguments in opposition to Plaintiffs' Motion relate to the futility of Plaintiff's proposed amendments. Because "denying a motion for leave to amend on grounds that the proposed new claim is legally insufficient is, at least indirectly, a ruling on the merits" of the claims presented in the complaint, this Court has recognized the "conceptual difficulty presented" when a Magistrate Judge, who cannot by statute ordinarily rule on a motion to dismiss, is ruling on such a motion. *Durthaler v. Accounts Receivable Mgmt., Inc.*, 2:10-cv-1068, 2011 WL 5008552, at *4 (S.D. Ohio Oct. 20, 2011) (recognizing the "conceptual difficulty presented"); 28 U.S.C. § 636(b)(1)(A) ("[A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion . . . to dismiss for failure to state a claim upon which relief can be granted . . . .").

In light of this procedural impediment, the Court concludes that the better course would be to permit Plaintiff to amend her Complaint with the understanding that Defendants are free to challenge the claims against them through a motion to dismiss. *See Durthaler*, 2011 WL 5008552, at *4 ("[I]t is usually a sound exercise of discretion to permit the claim to be pleaded and to allow the merits of the claim to be tested before the District Judge by way of a motion to dismiss."); *Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md.*, 715 F. Supp. 578, 581 (S.D.N.Y. 1989) ("The trial court has the discretion to grant a party leave to amend a complaint, even where the amended pleading might ultimately be dismissed.").

## IV. DISPOSITION

For these reasons, Plaintiff's Motion to Modify Scheduling Order and for Leave to File Second Amended Complaint (ECF No. 33) is **GRANTED**. The Clerk is **DIRECTED** to file on

the docket Plaintiff's Second Amended Complaint, attached to her Motion at Exhibit 1 (ECF Nos. 33-1).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE